[Civ. No. 16131. Second Dist., Div. Three. July 9, 1948.]

JEAN WOLFE, Appellant, v. ROSA HELLER, Respondent.

Martin Goldman and Leo A. Freeman for Appellant.

Denio, Hart, Taubman & Simpson for Respondent.

WOOD, J.—This is an action to recover $2,500 which was paid by plaintiff to defendant as part of the purchase price of real property, upon the understanding that said amount might be retained by defendant as liquidated damages in the event plaintiff did not complete an escrow. Judgment was for defendant, and plaintiff appeals.

On July 14, 1944, defendant signed escrow instructions, No. 72-12228, which named the Long Beach branch of the Bank of America escrow holder, and which set forth the terms of sale of the property by defendant to plaintiff. The instructions recited that the purchase price was $130,000, that plaintiff should pay $27,500 into escrow, and pay $2,500 outside of escrow, and assume a mortgage of $100,000; and that if the escrow holder should be unable to comply with the instructions on or prior to October 14, 1944, it should comply as soon thereafter as possible unless a written demand for return of money or instruments be made by a party to the escrow. The instructions also recited ''It is also further understood that these instructions are not to become binding upon me until such time as I have received the sum of $2500.00 outside of escrow on or before July 24, 1944, and upon receipt of said sum, I will notify you in writing.'' Those instructions were not signed by the plaintiff. On July 15, 1944, plaintiff signed other

escrow instructions, No. 362-9186, which named the Wilshire-Western branch of the Bank of America escrow holder. These instructions were not signed by the defendant, and they were different in substantial respects from those signed by defendant. One of those differences was that plaintiff's instructions included a provision to the effect that defendant should assign to plaintiff ''the existing lease covering the subject property.'' Plaintiff's instructions did state, however, that $2,500 had been ''paid to seller outside of this escrow.'' On the same day, July 15th, the Wilshire-Western branch of the bank, hereinafter referred to as the Wilshire branch, wrote a letter to the Long Beach branch, enclosing a copy of plaintiff's escrow instructions and a certified check of one A. Bisno for $2,500. In that letter the escrow instructions of both plaintiff and defendant were referred to by writing the numbers of both escrows at the top of the letter, and it was stated therein that the $2,500 check should be delivered to defendant, and that the $2,500 was the ''sum referred to in the buyer's instructions as paid outside of escrow.'' That check was returned to the Wilshire branch, and thereafter on July 19, 1944, the plaintiff wrote a letter to defendant, enclosing the same check for $2,500, and referring to defendant's escrow number only. That letter was as follows:

Mrs. Rosa Heller,                                    ''July 19, 1944.
c/o Bank of America,
4th & Pine,
Long Beach, California
Attention Mr. C. A. Swope

In Re:   Escrow No. 74-12228.

Dear Sir:

This will be your authority to accept the check in the sum of Twenty-five Hundred Dollars paid to you outside of escrow in connection with the purchase of the property in Santa Barbara, California, occupied by Montgomery Ward & Company upon the understanding that in the event the purchaser does not complete the escrow this amount may be retained by you as liquidated damages.

The check signed by A. Bisno has been forwarded to you through Mr. Swope which is the $2500.00 provided for by our agreement.                    Yours very truly,
                                        Jean Wolfe
                                        Jean Wolfe.''

On July 20, 1944, defendant wrote a letter to the Long Beach branch notifying it that she had "received a certified check for $2500.00 as payment out of escrow referred to in your escrow No. 74-12228 between me and Jean Wolfe." There were various written communications thereafter between the banks relating to documents necessary to close the escrow. The documents referred to therein included a letter, dated October 3, 1944, written by the Wilshire branch requesting a grant deed, copy of the lease, assignment of said lease, and other documents. On October 5, 1944, the Long Beach branch wrote a letter to the Wilshire branch, enclosing a grant deed, statements of identity made by defendant and plaintiff, a rent statement signed by defendant, and tax bills; and stating that defendant would endeavor to deliver the lease and assignment of lease into escrow the next day. It does not appear that there were any further proceedings in escrow, and it does not appear that plaintiff performed any of the obligations on her part to be performed, except the payment of $2,500. On October 17, 1944, plaintiff's attorney wrote a letter to defendant in which he stated as follows: "I have examined the documents that were sent to the Los Angeles Escrow and discovered that there had been an assignment of a portion of the lease income to the Pacific Mutual Life Insurance Company. It appears, therefore, that there can be no compliance with Jean Wolfe's demand for an assignment by the seller of the existing lease. . . . and because the transaction as agreed upon cannot be completed through no fault of the purchaser, demand is hereby made upon you for the return of the $2500. paid outside of escrow." This action was filed on March 4, 1946.

Appellant contends that there was no meeting of the minds, and that no contract existed between the parties. It is true, as argued by appellant, that the escrow instructions of plaintiff and defendant, being different in substantial respects, did not constitute an agreement between them. It appears, however, from other circumstances that there was an agreement between the parties regarding the conditions under which plaintiff paid the $2,500 to defendant; and that defendant was entitled to retain the $2,500. The court found that on July 19, 1944, plaintiff paid $2,500 to defendant by transmitting said sum by said letter, hereinabove quoted, specifying therein the conditions under which plaintiff paid said sum to defendant; that no further payment was made to defendant by plaintiff; that defendant fully performed every act on

defendant's part to be performed; and that plaintiff never completed the escrow referred to in said letter of July 19, 1944. After the $2,500 check, which accompanied plaintiff's instructions had been returned, the plaintiff wrote the said letter of July 19th to defendant and enclosed therein the same check which had been returned. In that letter she referred to defendant's instructions only and stated that if plaintiff did "not complete the escrow" the said $2,500 might be retained by defendant as liquidated damages. Also in that letter defendant said that the check "is the $2500.00 provided for by our agreement." It is to be noted that defendant's instructions provided that her instructions were "not to become binding" upon the defendant unless she received $2,500 outside escrow on or before July 24, 1944. It appears from plaintiff's letter of July 19th that she intended, by paying the $2,500, to comply with said provision of defendant's instructions, and that it was her intention that defendant should, by the acceptance of the $2,500, become bound by defendant's instructions. Defendant accepted the check for $2,500 on July 20, 1944, and thereby became bound to perform all the conditions on her part to be performed under her escrow instructions. One of those conditions was that she should keep the escrow open at least until October 14th—a period of approximately three months — and during that time she should hold the valuable real property available for transfer to plaintiff. During that period of time she held the property available for plaintiff, delivered into escrow certain documents including a grant deed wherein plaintiff was grantee, and performed all other conditions on her part to be performed under her escrow instructions. As above shown, plaintiff did nothing toward completing the escrow with the exception of paying the $2,500. She did not deposit in escrow, or offer to deposit therein, any part of the balance of $27,500 required by the escrow. The findings of the court are supported by the evidence.

The matter of the assignment of "a portion of the lease income," referred to in the letter of October 17th by plaintiff's attorney—written four days after the stated time for closing the escrow, is not justification for plaintiff's failure to complete the escrow. Although appellant does not contend in her briefs that said assignment is such justification, that matter of the assignment should be referred to. Defendant's escrow instructions state that the rents should be prorated

as of the date of close of escrow, thereby indicating that it was contemplated by defendant that the lease would be transferred to plaintiff either by conveying the property by grant deed or by making a specific assignment of the lease. Defendant has not contended that the lease was not to be transferred to plaintiff. Plaintiff did not testify that she did not have actual knowledge of the assignment of the rent when she paid the $2,500. At the time the transaction was entered into plaintiff knew the provisions of the lease. In the proposed instructions signed by plaintiff she said: ''I hereby waive approval of said lease in this Escrow as the terms thereof are familiar to me and are satisfactory.'' It is to be assumed that she also had knowledge of the assignment of the rent. In 1940, defendant made and recorded the assignment of the rent as security for the payment of the $100,000 encumbrance on the property, and it was provided in the assignment that it should not interfere with the lessor's collection of the rent so long as there was no default under the encumbrance and so long as the rent was collected only one month in advance. Also in 1940, on the same day the assignment was made, she made a written agreement that if 40 per cent of the annual percentage rental exceeded $2,000 she would pay such excess to the encumbrance holder, the Pacific Mutual Life Insurance Company, to apply on said indebtedness. That agreement was also recorded in 1940, on the same day the assignment was recorded. In view of plaintiff's statement, that she was familiar with the terms of the lease and that they were satisfactory and that she waived approval of the lease in escrow, and in view of the fact that she did not testify that she did not know of the assignment and agreement when she entered into the transaction, it is reasonable to infer that, in addition to her constructive knowledge of the recorded assignment and agreement, she had actual knowledge regarding them. Even if she had only constructive knowledge regarding them, she is not in a position to contend, as stated in her letter of October 17th, that by reason of the written assignment she should recover the $2,500.

It is not clear why plaintiff opened another escrow at a place other than the place where defendant started the escrow for the transaction herein. Such method makes it more difficult to ascertain the contractual obligations, if any, between the parties. It also affords a prospective buyer an opportunity to avoid being bound by contract to purchase the property,

and to avoid liability in the event he later elects to abandon the transaction. Plaintiff now argues in effect that the different escrows and the letter created such confusion, ambiguity, and uncertainty that there was no meeting of the minds of the parties, and that no contract was made. It is clear, however, from plaintiff's letter of July 19th, that plaintiff paid the $2,500 to defendant, pursuant to the provisions of defendant's instructions, and upon the condition that said sum might be retained by defendant as liquidated damages if plaintiff did not complete the escrow which was started by defendant. It is also clear that defendant accepted the $2,500 upon that condition. By reason of that letter and the payment of the $2,500 in connection with defendant's escrow instructions, plaintiff caused the defendant to hold this valuable property available for plaintiff for a period of approximately three months. ■ The result of the transaction, insofar as plaintiff was concerned, was that plaintiff, without being bound by contract to purchase the property, obtained the privilege of purchasing the property within a period of approximately three months. Appellant's contention that there was no consideration for the payment of the $2,500 is not sustained. The privilege of purchasing the property within said period of time was a sufficient consideration.

■ An agreement regarding liquidated damages is valid "when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damages." (Civ. Code, § 1671.) The provision as to liquidated damages in the agreement here involved is valid. The property was of the approximate value of $130,000, and defendant was deprived of the right to sell it to anyone other than plaintiff for a period of approximately three months.

The judgment is affirmed.

Shinn, Acting P. J., and McComb, J. assigned, concurred.